It is the final day, and as always we save the best cases for last. We have two only today, so we'll proceed through those without an intermission, is our present expectation anyway. One concern of the panel is that we maintain our schedule, so please watch the lighting system that we use, and when a red light comes on, that is the end of your argument. So do finish your sentence without too many semicolons and the like, but that is the end of your presentation, unless we give you the right to continue. First case of the day, Raul Terrazas-Hernandez v. William Barr. Good morning to you all. I'm Stephen Spurgeon from Marfa, Texas, for the petitioner Raul Terrazas-Hernandez, and I've been asked to bring warm greetings from my colleagues in Marfa, Texas, and from my colleagues in Marfa's largest suburb of Alpine to say hello. Is that one of many suburbs? It's the only suburb, okay? Okay. Also with me today, Your Honors, are the family of my client. They're sitting to your right, third row, the Terrazas family. Welcome. And we thank you for the We have limited time, so I would get to the case. Yes, ma'am. In the small towns of rural West Texas, we have this sport. In small towns of rural West Texas, where I grew up, the communities revolve around the post office, the public schools. Marfa. Yes, sir. Please spare us this. Just give us your presentation. When Raul Terrazas-Hernandez was deported after 2012, pursuant to the deportation order, he was entitled to see an immigration judge to adjust his status to a lawful permanent resident, and he was denied that opportunity to do so. Well, he had been deported in 1993. Yes, Your Honor. You claim he came back legally by passing through one of these ports of entry and waving at someone. And my question is, in a way, why are we even here? Why is he back yet again after all of these illegal reentries? You're not challenging the 1993 order, as I understand it. I just don't understand why we're even here. First of all, Your Honor, there's one entry, and we don't think it's illegal. Let's start there. And let's start with the definition of what an admission is. This court, in fact, Judge Haynes, in Rubio v. Lynch just a few years ago, addressed this very issue. What is the definition of a lawful entry? No, what's the definition of an admission? Admission. Yes, there's no difference. That's correct. And the definition, as Congress has given, a definition of admission and admitted means with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer. That's what happened here. Well, Counsel, the flip side is, though, he is accused of an unlawful reentry, which requires the approval of the attorney general. We're talking about two different concepts under a very complex set of statutes. And the case law you have cited to us is dealing with the meaning of admissions, and what we're looking at is the need for his entry to have been lawful. I must say it sounds like the same thing, but under the immigration statute it's not the same thing, unless you can convince us that it is. Well, Your Honor, I'm not going to try to convince you of that, but what I am going to try to let you know is that when my client was removed from the United States, he was given a piece of paper, and it's found at, I guess, the record on the pill at page 99. And it deals with the language about if you want to come back, you've got to write a letter to the attorney general, you've got to write a letter to the consulate, and if you don't, you can be prosecuted under 1326. My position is, Your Honor, is that this is not a 1326 case. My client was never prosecuted under 1326, and no judge and no judicial body has determined that he illegally reentered the United States. And under the Supreme Court precedent he was ordered to be removed in 1993, and he did, and he has repeatedly come back into this country. So, you know, again, as I understand it, his supposed reentry through, I guess, over a point of entry was he just drove through in a car. And as Judge Southwick says, he did not get permission from the attorney general to come back. He didn't get permission from the attorney general to come back, but Congress did not make that a requirement under the statute of the definitions. That wasn't a requirement. Well, they said it had to be lawful, and in Rubio we were dealing with the question of admitted in any status. And the debate there that even led to an en banc vote that was overruled but yielded a dissent was does any status encompass illegal status or undocumented status. But that isn't our question here. I actually was interested that you all didn't cite Rubio, so I went back and looked at it because, of course, I remembered Rubio, and I thought this really has nothing to do with it except that it involves a wave through. But the wave through there was admitted in any status. So you're lawful, you're not, you're lawful, you're not. Well, I'm just waving and waving and I'm not paying attention to that. That isn't the same thing as legal entry, which is our question here. Right? Correct. That's probably why I didn't cite Rubio in the first place and only now raise it because I happen to be on this panel. Well, I, it's not because you're on this panel, but I didn't read Rubio. When I was writing my brief, I wish I had. I would have cited it because I think the reasoning, I think the reasoning of when we're dealing with the issue of how the lawful admission is defined by Congress and the definition that pertains to this case. But I really want to address this whole situation with Fernandez-Vargas. My client shouldn't have been deported to begin with. Wait a minute. You're talking about in 1993? Yes, sir. Twenty-one years ago? Yes, sir. Twenty-two years ago? Fernandez-Vargas addresses that issue, Your Honor. Fernandez-Vargas addresses the issue on the retroactive application of the statute. We're not talking about retroactive application of the statute right now. I'm talking about his original removal in 1993. Yes, sir. Went through the normal adjudication, and he was ordered removed. He didn't go through the normal adjudication. How not? Because he wasn't afforded the opportunity to present his beneficiary status under the I-130. Now, wait a minute. Did it go through an IJ? Pardon me? Did it go through an immigration judge? No, sir. That did not go through the immigration judge. In 1993? In 1993? No, sir. A suspension of deportation went through the immigration judge. He was not provided the opportunity in 1993 to argue that his status should be adjudicated. How was he prevented from arguing that? Because there wasn't a visa available yet. How was he prevented from saying, I've applied for a visa, and please let me wait? Because he said suspension of deportation. That is allowing you to stay while you're waiting for X or Y. So that was litigated. And why isn't that good enough? Because the judge found that the suspension of deportation, he wasn't eligible. Well, that's a good question. Let's back up a second. The judge's order said he got suspension of deportation. I thought that was kind of interesting. Maybe that was just a mistake. But it said that I'm going to give you suspension of deportation. Also, we're sending a lot of sort of signals at you. You need to stay behind the microphone so it will pick up the— or the microphone will pick up your statement. My point is, is that the immigration judge did not give him suspension of deportation because he couldn't prove he'd been here the required number of years in order to get suspension of deportation. But the immigration judge never evaluated. He never had an opportunity, ever has he had an opportunity. The difference between whether he had an opportunity and whether he knew he could make an argument and didn't make the argument or did make the argument or whatever, to me, once you're in front of a judge, you've got the opportunity. I've had all kinds of people appear in front of me saying all kinds of stuff once they're in front of me when I was a trial judge. So I don't understand why he didn't have the opportunity. I think it was that he didn't know what his remedies were, but that isn't something you can raise some 25-plus years later, is it? It is, and here's why it is. The approval of an I-130 never goes away. It's approved, it's approved. The question is how do you adjudicate? I want to ask you about that, but just answer this question. After the IJ rule, did he seek an appeal to the BIA in 1993? He appealed the suspension. Right, to the BIA. Yes, Your Honor. Did he raise to the BIA, I've never had a chance to have my I-130 considered? No, sir. Right. And then did it come to our court? No, sir. All right. Now, the government in Note 5 at page 6 says, it is not clear from the record when Petitioner married his current wife or when she became a United States citizen, as he alleges she is. Is there anything in the record about that? There's something in the record that he has the approved I-130, and that was approved in 1984. I noted you didn't file a reply brief. Why didn't you file a reply brief and respond to things like this the government raises? I probably should have. Did you say, I probably should have? Yes, sir. I probably should have. All right. It would have answered your question. Well, it would have answered a lot of questions, maybe. All right. How can we re-litigate 1993? You don't have to re-litigate 1993. Well, that's what you keep talking about. How procedurally is it done? The case is remanded to the Immigration Judiciary. No, of course. I just mean we typically have deadlines, and deadlines need to be followed. And I'm not for sure what exactly the deadlines were in 1993, but they weren't 25 years. I know that. So I'm a bit struggling with why your focus is on re-litigating stuff instead of dealing with the present situation. Well, our IRA came into effect on April 1, 1997. Okay. Prior to that date, this wasn't an issue. Prior to that date, he would have been ---- and, in fact, his adjustment of status was denied by USCIS because he'd been deported. The Immigration Judge no longer had authority to do that. Our position is, Your Honor, that under Fernandez-Vargas, it's impermissible to retroactively put the IRA-IRA bar upon my client when he had a pending approved I-130 approval notice, and he could have adjusted his status to the Immigration Judge in 2012 when he was before the Immigration Judge. Did he raise it to the IJ or didn't raise it to the BIA? Not initially in 1993, no, sir. Do you practice immigration law, Mr. Spurgeon? Yes, sir, some. Excuse me? Yes, sir, as part of our law practice. Got something further? Well, the ---- My client should have had an opportunity in 2012 when they tried to reinstate the order, okay, they should have had the opportunity in 2012 to present the approved I-130 and the adjustment of status to the Immigration Judge. That's what he was denied the opportunity to do, and he should have been given that opportunity because IRA-IRA is not interpreted as being retroactive when you have pending relief. Unlike all the other people that are in the case law here, my client had pending applications, and he didn't get an opportunity to present to the Immigration Judge in 2012 when he was before the judge and he had the opportunity to do so. And that's ---- What's the reason for the delay? He was removed in July of 2017. What has been the reason for the delay in this getting to our court? Getting to your court? This court you're in right now, Mr. Spurgeon. What's the delay? I don't think there is a delay, Your Honor. From July 2017 until March 2019? We filed our petition for review time. There wasn't an issue. I think the government's brief agrees that our petition is timely. No, I'm not suggesting your petition isn't timely. I'm just curious as to why this has taken so long to arrive at our doorstep this morning. You don't know? What's taken so long to arrive? When did you file the appeal? What was the date? Maybe the delay is ---- Your case number is a 2017 case number, so the notice of appeal got here in 2017. I'm just trying to wonder why a year and a half later. Is it our fault? I might have asked for a short extension to file my brief. I know counsel, we did the same thing for counsel. But I can't imagine why we would have any reason not to want to come and present our case to this court. Where is he right now, Mr. Charles? Mexico. So he's seeking to come back. He'd like to come back. Under our RF, we're going to interpret it that way. He can't come back for a very long time. But it shouldn't have been applied to him. All right, counsel. I don't know how else to say this, but I've got a minute. The Supreme Court's case in Fernandez-Vargas explicitly set forth that Ira Ira is retroactive for that particular individual because he didn't have any pending relief applications. He stayed in the United States and didn't do anything. That's not true for my client. When he returned, they went through the process. They went through the process. When he returned, you claim legally. The government says illegally. That's correct, Your Honor. Right. But, I mean, he— So at least you can see the Supreme Court case is not a hard and fast rule. You look at the particular facts. That's correct. Right. You look at the facts. But there was procedural regularity when he came into the United States. He didn't sneak across the river. He didn't hide. Okay. This is one more thing I want to—if the issue really is had he come into the United States, how come nobody gets to litigate that? How come there wasn't a hearing on that? How come we couldn't have his wife come? I think the problem is even if we accept his statement that he was waived through, that is not a lawful admission. And Rubio doesn't say it is. It says it's admitted in any status, which is a different term. We have time for rebuttal. We'll hear from the government. Good morning, Your Honors. May it please the Court, I'm Carmel Morgan on behalf of the respondent, the United States Attorney General. The government asks that you deny the petition for review. My understanding was that there were two issues in this case. A third issue that Petitioner's Counsel seems to raise today is a problem with the 1993 deportation order. That certainly wasn't briefed, and I don't think that's timely or properly before this Court. Judge Barksdale's question to the opposing counsel does make me wonder. Is there any particular reason, or we're slow to schedule this for argument in particular? Yeah, I'm afraid it may be the Court's fault. As far as I know, I don't recall whether we each got an extension. That's certainly possible, but it was timely filed. Well, your brief was filed in November 2017. Yeah, right. We've been waiting to hear from the Court. Well, in the future, if you think there's a whole lot of— Not us three, but us. Well, it was a fairly direct way to put it, but you're probably right. It's the Court's fault, so you can proceed. As to the first issue on retroactivity, there simply isn't a retroactivity issue in this case. There can't be, because at the time of his reinstatement order in 2012, the adjustment application that was filed in 1995, which is the only one that would work under his argument, had already been decided and denied in 2001. That was about a decade, at least a decade, before the reinstatement actually occurred. That 1995 adjustment application was denied because the petitioner didn't show up for the scheduled interview. So the reason for the denial of his application had nothing to do whatsoever with the reinstatement bar. That didn't come into effect until much later. It's simply untrue that that particular application was pending at the time that his removal order was reinstated. It would have been a better argument had it still been pending. The Court hasn't decided that issue specifically in a case where a visa would have been immediately available, but the Court did look at a case in Silva-Rosa where the petitioner, like this petitioner, had filed an adjustment application in this window of time before the reinstatement statute became effective in 1997. In Silva-Rosa, the visa didn't become available until after 1997, and so the Court said there wasn't a retroactivity problem there. And here there's not a retroactivity problem because that particular adjustment application was decided. He wasn't denied an opportunity to have that considered. The agency considered it and denied it because he didn't show up for the interview, so it was denied as a matter of law for failure to prosecute. He had been removed, right? So he needed to send counsel or somewhere? How would this have worked? How would he have showed up? How would he have showed up? Yeah, that's a good question. Do you have a good answer? In some cases, you could go to a consulate abroad and— He was ordered to appear before or at least a form or whatever says appear before an IJ. Yes, he did. And that notice was given. And I assume he could sit a representative, though a lot of these folks aren't represented, and I don't know about this one. He was ordered to self-remove. He was back in the country. Yes, he was back in the country at that time. At the time that the IJ ordered him to appear, was he here or was he back in Mexico? Oh, at the time the IJ ordered him removed, he was here. Okay, so he could have appeared. I'm talking about the appearance he missed. Where was he? I believe he was in the United States at that time. But improperly? According to his testimony. Because he self-removed and then he came back two days later is my understanding. Yes. And then he didn't leave again until recently? Yes. Okay. So he was here. He could have shown up, albeit that he's not here lawfully, but he wouldn't be the first person to show up at a hearing who hasn't been lawfully admitted. Sure. That's my understanding. That's why they're there. My understanding, according to his testimony— You're lawfully admitted. You don't usually have to have a hearing. Yes. His testimony is that he was back in the United States at that time. As to the illegal reentry question, if it sounds familiar, Judge Haynes, I believe, was on the panel in Anderson that established the rule that if there's no evidence that the Attorney General consented for the alien to reapply for admission, then that can't constitute a legal entry. And Judge Southwick was on the panel in Avalos-Martinez. It was an unpublished decision, but it also addressed this very similar issue. I mean, you all do know we have to apply the law whether we wrote the panel opinion or not. Oh, sure. Yes. I'm just saying if it sounds familiar, if you've heard it before. Well, it's nice if all these familiar-sounding cases are actually cited, and you did cite Anderson. You didn't cite Rubio. Do you know about Rubio? Are you ready to talk about it? I wasn't aware, but based on your description of it, if it's construing the term admission, that's a very different term than that. Well, admitted in any status, the phrase. That's what it was construing. But I assume that didn't look at the reinstatement statute, and that has no mention of admitted in any status. It uses the term reentry rather than admission. There's several decisions that we cited. One, very recently I submitted to the court about a week ago a Seventh Circuit decision in Mendoza. There's also a Tenth Circuit decision in Cordova-Soto and a couple of Ninth Circuit decisions as well, and they all determine that a waive through entry or some mistaken entry doesn't count as a lawful entry for purposes of the reinstatement statute. It would be really ironic if somebody could be prosecuted for criminal illegal reentry and yet not have the prior deportation order reinstated. Yeah, I know Rubio didn't say it was lawful. The point was any status the panel opinion thought meant any, which would include undocumented, whereas the dissent from denial of rehearing on bonk thought it meant any lawful status. That was the debate, which really I don't think has to do with this, and that's why I thought originally you all did decide it, but I guess the temptation is too strong when I'm on the panel to cite everything about immigration I've ever written, so I appreciate that. Well, I apologize if I overlooked something, but based on what you've said, I don't think it applies in this case. We're specifically looking at the context of a reinstatement of removal in that particular statute, and any status is not language that's used there. I'm happy to entertain further questions, but I don't think either of the petitioner's arguments work in this case. There's simply no retroactivity issue, and his waive through entry, even if we take that as credible, just simply cannot establish a legal entry for purposes of reinstatement of removal. All right, counsel. If there are no further questions, we ask that you deny the petition for review. Thank you. The two issues that we placed in our brief are the issues that I have addressed with this court today. We have not brought any new issues before this court. Did ICE err in reinstating his prior removal order on August 25, 2012, because prior to IRA-IRA, my client had applied for adjustment of status. Now, I want to address the issue the court had and why he didn't show up. The record on appeal indicates that the notice was perhaps mailed to a Peel box. My client probably had a duty to notify him of his good address. He wasn't ordered to appear before an immigration judge. He was ordered to appear before USCIS. That's different without a distinction, but it wasn't an immigration judge that he didn't show up for. USCIS and an immigration judge have authority under the law to adjudicate petitions for I-130. And if you lose with the USCIS, you are still allowed to present your case to an immigration judge if you are in proceedings. And when they reinstated the deportation order, he was in proceedings, and he didn't have an opportunity to present the I-130 and the I-485 to that immigration judge because they just simply reinstated the removal order and he was removed. The only thing that went before the immigration judge was his claim of being fearful to return to Mexico. That's what went before the judge. Well, that's my question. Did he raise before the immigration judge on this reinstatement, wait, I want my I-130 adjudicated? He didn't get a chance. Sir, he went to the hearing. He had a lawyer at the hearing. They complained about everything. Then the lawyer didn't show up for a second hearing. Were you the lawyer? I was the lawyer, but that wasn't the way it worked was not showing up for a hearing, Your Honor. The way it works with this particular immigration judge, with Judge Abbott, is when he is simply— The record says that the lawyer, you, one of the hearings didn't show up, but you were interested in what happened or something. I don't want to get into this, but if it wasn't presented at the reinstatement, we've got a failure here to present a claim. Your Honor, that's not accurate. Let me tell you why. The only thing that's before the judge on a reinstatement deals with the asylum issue. There's no other issues involved because that's the only thing the IRR allows him to look at. There's no other kind of review but that. He wouldn't have had the opportunity. There was no opportunity. There was no opportunity. My client was fearful of going back to Mexico, and his reasons for going back to Mexico aren't covered under the protected grounds of asylum. And so the only thing the judge could do was reinstate—could reinstate it. It wasn't an issue of whether or not he had a pending—he was a beneficiary under an I-130 and whether he could adjust his status. Because the judge didn't have an opportunity. If you review the transcript, it's very clear it's what the judge says. The only thing before me is the asylum case. You don't meet the requirements. I'm reinstating the deportation order. But— You can make a record, sir, and maybe it wouldn't have hurt to have at least said, well, we think we got a valid I-130. I'm just pointing that out to you. Point well taken, Your Honor. Thank you for your time.